ROTH, Senior Judge, dissenting:
 

 The judicial branch of our federal government should be sheltered from the political maneuverings of foreign nations. These matters are best left to the executive and legislative branches. Nevertheless, there are occasions when it becomes evident that the machinations of a foreign government have, inadvertently to the courts, become entangled in the judicial process.
 

 This case is an example of such a situation. It has become clear that the Russian government has been employing Interpol alerts or "Red Notices" to pursue and harass opponents of the Russian regime.
 
 See, e.g., The Atlantic
 
 , July 30, 2018;
 
 The Atlantic
 
 , May 30, 2018;
 
 The New York Times
 
 , November 6, 2016;
 
 The Globe and Mail
 
 , September 25, 2015. A member country of Interpol, such as Russia, can request that Interpol issue an arrest warrant to aid in capturing a fugitive. Interpol will then issue a Red Notice and, on the basis of that notice, the fugitive can be arrested by the authorities in another member country where the fugitive may be located. This is designed to be an important tool in fighting crime. It is a tool, however, that has been misappropriated by the Russian government to punish political opponents who travel abroad.
 

 Opponents of the present Russian regime have been arrested in countries around the world on the basis of a Red Notice. They then have had extreme difficulty in convincing the authorities of the arresting countries that they are not criminals but are being pursued by the Russian government for political reasons.
 

 The petitioner here claims that he is not a criminal. He has no criminal record anywhere. He was arrested by ICE for overstaying his visa. Then, on the basis of an Interpol Red Notice, requested by Russia, he has been held in custody since April 22, 2016, on the ground that he is a danger to the community. The reason for being classified as a danger is the Red Notice, nothing else. We have just learned that as of July 28, 2018, Interpol withdrew the Red Notice on Borbot. Nevertheless, Borbot remains in custody at least until there is a new ruling on danger to the community by the BIA.
 

 To obtain the Red Notice, Russia charged Borbot with fraud. Borbot has demonstrated that the "fraud," an alleged overcharging on a shipyard construction contract, was baseless and politically motivated. He has applied for political asylum. Moreover, there was a civil suit brought against Borbot in a Russian court on the basis of the same shipyard overcharges. The suit was dismissed as groundless and the dismissal was affirmed.
 

 It is contrary to my concept of justice to hold in custody an individual who is the innocent victim of a rogue foreign government. For that reason, I would recommend that a new hearing be held by the IJ to review the finding of "danger to the community." Such a review is necessary to prevent a foreign government from improperly influencing our immigration courts.